## HARBOR INSURANCE COMPANY

### v.

## CONNECTICUT INSURANCE GUARANTY ASSOCIATION.

### Civ. No. H–87–551(AHN).

United States District Court,
D. Connecticut.

April 14, 1989.

John Farley, Halloran, Sage, Phelon & Hagarty, Hartford, Conn., for plaintiff.

Steven A. Levy, Friedman, Mellitz & Newman, Fairfield, Conn., for defendant.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

The plaintiff, Harbor Insurance Company ("Harbor"), brings this diversity action against the Connecticut Insurance Guaranty Association ("the Association"), seeking partial indemnification of its payment in settlement of a claim against its insured arising out of a motor vehicle accident. In particular, it seeks to recover the portion of the settlement payment allegedly made in behalf of the insured's primary insurer, which had become insolvent prior to entry of the settlement. Harbor, the excess insurer, negotiated and paid the full settlement before the Association determined whether it was required under the Connecticut Insurance Guaranty Association Act ("CIGAA") to assume any liability of the insolvent insurer with respect to the underlying claims. In denying liability for any

---

part of the settlement payment, the Association argues that Harbor's claim is not a "covered claim" within the meaning of the CIGAA and thus is not payable by it. In the alternative, it contends that Harbor's claim is barred by the failure on the part of the claimants to exhaust other insurance available to them. The parties have presented cross motions for summary judgment based on these two issues.

## Background

The facts giving rise to this action are not in dispute.[1] The parties filed a joint stipulation of facts, a summary of which is set forth below.

On August 9, 1986, Motor Cars Leasing of Torrington, Inc. ("Motor Cars") rented an automobile to Kenneth J. Rinaldi. While driving the car in Torrington, Rinaldi negligently crossed the centerline of Torringford Street and collided head-on with a car in which Robert and Loris Geer were travelling. As a result of the collision, Robert Geer was killed and Loris Geer sustained serious bodily injury.

Integrity Insurance Company ("Integrity") provided primary automobile liability insurance coverage to Motor Cars at the time of the accident. Its policy with Motor Cars limited coverage to $20,000 per-person and $40,000 per accident. Motor Cars also had an automobile liability excess indemnity insurance policy with Harbor Insurance Company ("Harbor"). This policy covered Motor Cars for the excess over the declared limits of the Integrity policy up to a maximum of $1,000,000. In addition, the Geers had automobile liability insurance with Allstate Insurance Company which included uninsured/underinsured motorist coverage with a limit of $300,000 per person and $500,000 per accident.

Harbor assumed responsibility for the adjustment of the claims asserted by the Estate of Robert Geer and Loris Geer as a result of the automobile accident. Recognizing that the potential dollar exposure on these claims could well exceed the $1,000,000 liability limit set forth in its policy, Harbor entered into settlement negotiations with the Estate of Robert Geer and with Loris Geer (collectively, "the Geer claimants"). In early March, 1987, Harbor was notified that Integrity had become insolvent and would be placed into formal liquidation later that month.

On April 14, 1987, Harbor wrote to the Connecticut Insurance Guaranty Association to determine whether it would assume Integrity's liabilities and obligations, as provided for by the CIGAA, and pay Integrity's underlying limits as part of the settlement of the Geer claims. The Association did not respond to the letter since it had not yet received the Geer file from Integrity's receiver. Harbor ultimately succeeded in settling both Geer claims by agreeing to make a total payment of $631,156. Under the terms of the settlement, the Estate of Robert Geer received $100,000 and Loris Geer received $531,156.

The Association received the Geer file from the Integrity receiver after Harbor had already settled the Geer claims. Nevertheless, it wrote to the Estate of Robert Geer, to Loris Geer and to Kenneth Rinaldi, recommending that, prior to submitting a claim pursuant to the CIGAA, they determine whether other insurance coverage was available to them. No claim was ever submitted to the Association by the Estate of Robert Geer or by Loris Geer.

Harbor has brought this action to recover the sum it paid in settlement of the Geer claims for which Integrity was originally responsible.[2] It seeks to establish that its

---

1. Given the absence of any factual dispute, this case is ripe for summary judgment. Under Rule 56(c), Fed.R.Civ.P., summary judgment must enter "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

2. Harbor initially sued to recover $40,000 from the Association. It subsequently reduced its claim to $20,000, recognizing that Motor Car's primary coverage applicable to the claim of Robert Geer's estate was available up to the $20,000 limit of Harbor's policy under the Geers' policy with Allstate. Under Conn.Gen. Stat. Section 38–282(1), the Association assumes the liabilities of an insolvent insurer only after

claim against the Association is "covered" within the meaning of the CIGAA, Conn. Gen.Stat. Section 38–275 *et seq.*, and thus payable by the Association. The Association responds that an excess insurer, like Harbor, may not assert a "covered claim" under the CIGAA. Alternatively, it argues that Harbor may not recover because of the failure to exhaust rights parallel to the "covered claim" under other coverage available to the claimants. Since the court finds the latter argument to be dispositive of the case, it assumes that Harbor's claim is a "covered claim" for purposes of the pending motions. For the reasons set forth below, summary judgment shall enter in favor of the Association.

### Discussion

The Association is a "nonprofit unincorporated legal entity" created by statute. Conn.Gen.Stat. Section 38–276. Its plan of operation, organizational structure, obligations and powers are set forth in the CIGAA. *Id.* Section 38–273 *et seq.* The CIGAA provides that the Association assume "all rights, duties and obligations" of an "insolvent insurer" with respect to claims "covered" by the statute.[3] *Id.* Section 38–278(1)(b). It also requires the Association to "investigate claims brought against [it] and adjust, compromise, settle and pay covered claims to the extent of [its] obligations, and deny all other claims." *Id.* Section 38–278(1)(d). Further, "[i]t may review settlements ... to which the insolvent insurer or its insureds were parties to determine the extent to which such settlements ... may be properly contested." *Id.*

The Association is authorized to pay and discharge "covered claims" only. *See id.* Section 38–278(1). The CIGAA defines a "covered claim" as "an unpaid claim ... which arises out of ... the coverage ... of an insurance policy ... issued by ... an insurer [which] becomes [ ] insolvent." *Id.* Section 38–275(4).[4] In addition, the Association assumes the liabilities of an insolvent insurer on a "covered claim" only after the claimant has exhausted his rights under other available insurance policies. *Id.* Section 38–282(1).

With respect to the prerequisite of exhaustion, the CIGAA provides that:

[a]ny person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer, which is also a covered claim under this chapter, shall exhaust first his rights under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under such insurance policy.

*Id.* It follows from the language of this provision that one cannot recover on a "covered claim" if the claimant has failed to exhaust rights under any available coverage afforded by a solvent carrier.[5] In the instant case, it is undisputed that the Geer claimants failed to assert any claims under the Geers' uninsured motorist policy carried by Allstate.

The contract of insurance between the Geers and Allstate contained uninsured motorist protection with limits of $300,000 per

---

all other sources of available insurance coverage have been exhausted.

3. The applicable provision of the CIGAA states that the "association shall ... be deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent...." Conn.Gen.Stat. Section 38–278(1)(b).

4. The statute further defines a "covered claim" not to include "any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise." Conn.Gen.Stat. Section 38–275(4). The parties direct considerable argument to the meaning of

this provision in the context of this case. The court declines to reach the merits of this issue, however, since it is unnecessary to the disposition of the pending motions.

5. The court is aware of no reported decision construing this or any other provision of the CIGAA. However, identical provisions governing the insurance guaranty associations in sister states have been interpreted to bar recovery against those associations for claimant's failure to exhaust other available coverage. *See Broughton v. Manning Motor Express, Inc.*, 677 F.Supp. 531 (S.D.Ohio 1987) (Kentucky Insurance Guaranty Association); *Henninger v. Riley*, 317 Pa.Super. 570, 464 A.2d 469 (1983) (Pennsylvania Insurance Guaranty Association Act).

person and $500,000 per accident. The policy extended coverage to "motor vehicle[s] for which the insurer ... becomes insolvent." Stipulation of Facts, Exhibit D at 23. Connecticut law also requires that uninsured motorist coverage afforded to Connecticut residents have such a reach. *See* Conn. Agencies Regs. Section 38–175a–6(a) (1986). Because of the insolvency of Integrity, the automobile rented by Mr. Rinaldi became an "uninsured motor vehicle," triggering the rights of the Geer claimants to recover under the uninsured motorist coverage of the Allstate policy. The Association advised the claimants in writing that such "coverage may be available and must be exhausted before looking to us for any recovery." Stipulation of Facts, Exhibit H. No claim was ever asserted under the Allstate policy.

Harbor contends that the exhaustion requirement of Section 38–282(1) is inapplicable to the instant claim because of its liability payment to Loris Geer. It argues that any rights Loris Geer held under the uninsured motorist coverage of the Allstate policy were extinguished as a result of that payment. It bases this argument on a provision within the Allstate policy which states that the limits of its coverage are reduced by "all amounts paid by the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage of this or any other auto policy." Stipulation of Facts, Exhibit D at 24. Harbor interprets this provision to mean that "the only coverage 'available' under the Allstate policy was the amount of coverage in excess of [its] liability payment" to Loris Geer. Memorandum of Law in Support of Harbor Insurance Company's Motion for Summary Judgment at 9. Since Harbor's payment exceeded the $300,000 limit of the Allstate coverage, it argues, the Allstate policy became unavailable for purposes of the CIGAA and therefore has no bearing on the instant claim asserted against the Association.

Connecticut law is unsettled on the question of what effect, if any, is given to the liability payment *of an excess insurer* upon the limits of another carrier's uninsured motorist coverage in light of the insolvency of the insured's primary insurer. The CIGAA requires that all other available insurance be exhausted before the Association assumes the liabilities of an insolvent insurer. However, Connecticut's uninsured motorist statute provides that:

> [a]n insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

Conn.Gen.Stat. Section 38–175c(b)(1). The state's insurance regulations further provide that an uninsured motorist insurance policy "may provide for the reduction of [its] limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury...." Conn. Agencies Regs. Section 38–175a–6(d) (1986). Thus, the question becomes whether Harbor's payment to Loris Geer reduces the available Allstate coverage to nothing or merely to the extent of Harbor's secondary liability—i.e., over and above the $20,000/$40,000 underlying limits of the Integrity policy.[6] If the payment only partially reduces Allstate's coverage, then the exhaustion prerequisite to recovery against the Association has not been met.

The facts of this case relieve the court of the necessity of deciding this question. Harbor and Loris Geer entered a full settle-

---

**6.** Defense counsel at oral argument raised a corollary question: whether Harbor is entitled to rely on the Allstate provision to escape the exhaustion requirement of the CIGAA when the application of that provision to this case could have been determined through arbitration. The Allstate policy entitles an insured to resolve the meaning or application of any of its provisions by means of arbitration. *See* Stipulation, Exhibit D at 25.

ment of the latter's claims against Motor Cars. Loris Geer did not independently or through Harbor pursue her rights under the uninsured motorist coverage carried by Allstate. Neither she nor Harbor sought the involvement of Allstate in the settlement of the underlying claim. According to Harbor, Loris Geer effectively relinquished her rights under that coverage as a result of the settlement. Harbor now seeks to proceed against the Association and avoid the exhaustion requirement of the CIGAA on the basis of a provision in the Allstate policy to which its own deliberate conduct gave effect.

It is undisputed that Loris Geer, prior to her settlement with Harbor, had a claim against Allstate "which [was] also a covered claim" within the meaning of Section 38–282(1) of the CIGAA. Had it not been for the settlement with Harbor, she would have been able to raise a claim against the Association subject to the exhaustion of her rights under the Allstate policy.

Her decision not to exhaust those rights precluded recovery against the Association. At oral argument, Harbor's counsel conceded that she opted for this course of action out of a desire to obtain prompt recovery on her claim against Motor Cars. Counsel further conceded that Harbor sought a prompt settlement with Loris Geer to avoid substantially greater exposure under its $1,000,000 coverage of Motor Cars. Thus, Harbor admittedly benefited from the decision not to proceed against Allstate nor to add this party to the settlement negotiations. That decision preserved for Harbor the opportunity to discharge its liability to Loris Geer on the favorable terms for which it settled. Allowing Harbor to proceed against the Association for indemnification of the primary coverage, which had been, at least, otherwise available under the Geers' Allstate policy would thus result in a windfall for the plaintiff.

Assuming arguendo that Harbor, in fact, has a "covered claim," other reasons compel a finding that the excess insurer is bound by the exhaustion requirement under section 38–282(1). First, Harbor's attempt to escape that requirement simply by referring to its settlement with the claimant, if successful, would render section 38–282(1) virtually meaningless. This exhaustion provision is apparently designed to limit the Association's liability to situations in which no other source of recovery for damages exists.[7] If the claimant's failure to comply with this provision does not similarly bar the carrier with which she settled from recovering against the Association, then the Association would invariably be called upon to indemnify a secondary carrier despite the availability of solvent primary carriers. The claimant's settlement with one carrier would transform the Association from its role as an insurer of the last resort into a contributor to every settlement in which an insolvent insurer may be found near the scene. Harbor cannot confer upon itself what the CIGAA denied Loris Geer, a claim against the Association as an *additional* source of recovery.

Second, allowing Harbor to raise a CIGAA claim runs contrary to other provisions within the statutory scheme. The Association is given certain powers when it steps into the shoes of an insolvent insurer. It is empowered to "investigate" the merits of claims asserted under the statute as well as "adjust, compromise, settle, pay … [or] deny" such claims. Conn.Gen.Stat. Section 38–278(1)(d). In addition, "[i]t may review settlements … to which the insolvent insurer or its insureds were parties." *Id.* Harbor seeks to recover against the Association for Integrity's unpaid contribution to the settlement which Harbor unilaterally assumed in its payment to Loris Geer. Harbor made the payment without obtaining a commitment by the Association to pay the Integrity policy limit in the anticipated settlement with Loris Geer. In fact, the settlement occurred before the Association even received the Integrity file from the carrier's receiver. Thus, the Association was denied any opportunity to investigate, review or tender a defense, if appro-

---

7. *See Prutzman v. Armstrong,* 90 Wash.2d 118, 120, 579 P.2d 359, 362 (1978) (identical provision of Washington Insurance Guaranty Association statute).

priate, with respect to Integrity's liability to Loris Geer upon which, Harbor argues, the settlement payment was partially predicated.

Whatever benefits to Loris Geer or Harbor were gained by the prompt settlement, it precluded the Association from determining *for itself*, as provided for in the governing statute, whether, and to what extent, it would assume Integrity's liability. Thus, it would be particularly inappropriate for the court to do the plaintiff's bidding and hold the Association responsible for a claim as to which its statutory powers of investigation and defense were cut off by the plaintiff's unilateral course of action.

### Conclusion

For the reasons stated above, the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted.

SO ORDERED.